IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRUSTEES AND FIDUCIARIES OF THE IRON WORKERS DISTRICT COUNCIL (PHILADELPHIA AND VICINITY) BENEFIT AND PENSION PLANS, et al.,** | : : : : : | **CIVIL ACTION** |
| v. | : : | |
| **PENN UNION FENCE & IRONWORKS, et al.** | : : | No. 24-cv-00814 |

## MEMORANDUM

**KENNEY, J.**                                                                                                                 **JUNE 20, 2024**

      Plaintiffs in this case are Iron Workers District Council (Philadelphia and Vicinity) Pension Plan ("Pension Plan"), Iron Workers District Council (Philadelphia and Vicinity) Benefit Plan ("Benefit Plan") ("Pension Plan" and "Benefit Plan" collectively, "District Council Funds"), Trustees of the Iron Workers District Council (Philadelphia and Vicinity) Benefit and Pension Plan ("District Council Trustees"), International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers' Local Union No. 399 Annuity Fund ("Annuity Fund"), International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers' Local Union No. 399 Joint Apprentice Training Fund ("Apprentice Fund"), International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers' Local Union No. 399 Impact Fund ("Impact Fund"), International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers' Local Union No. 399 Industry Advancement Program Fund ("IAP Fund"), International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers' Local Union No. 399 PAC Fund ("PAC Fund"), International Association of Bridge, Structural, Ornamental, and Reinforcing Ironworkers' Local Union No. 399 Market Recovery Fund ("Market Recovery Fund")

("399 Apprentice Fund," "399 Annuity Fund," "399 IMPACT Fund," "399 Market Recovery Fund," and "399 IAP Fund" collectively, "399 Funds"), and International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers' Local Union No. 399 ("Union").

Plaintiffs bring this action against Defendants Penn Union Fence & Ironworks ("Penn Union") and Christopher Caruso to collect overdue employee benefit fund contributions pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et. seq., and the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185. ECF No. 1 ¶ 3. Specifically, Plaintiffs allege that Penn Union entered into a Jobsite Agreement with Ironworkers Local Union #399 but failed to adhere to its obligations under the applicable collective bargaining agreement ("CBA"), including making contributions to Plaintiffs and filing regular remittance reports. ECF No. 10 ¶¶ 4-5. The Court has subject matter jurisdiction over Plaintiffs' suit based on both ERISA and the LMRA. Thus, the Court has federal question jurisdiction. 28 U.S.C. § 1331.

This matter comes before the Court on Plaintiffs' Motion to Enter Default Judgment Against Defendants. ECF No. 10. Plaintiffs properly served Defendants with their Complaint on March 7, 2024. ECF Nos. 5-6. Defendants have not appeared in this case or otherwise responded to any filings. The clerk of court entered default against Defendants on April 5, 2024. ECF No. 8. Plaintiffs now request default judgment. ECF No. 10. This Court will enter default judgment and award Plaintiffs a cumulative $32,616.22 in unpaid contributions, plus interest, liquidated damages, and attorneys' fees and costs, as set out below.

I.     BACKGROUND

Because Defendants have not appeared, the Court must rely on Plaintiffs' filings for the relevant facts.

Plaintiffs are union-related funds, as well as the funds' trustees and fiduciaries. ECF No. 1 ¶¶ 4-9. At all relevant times, due to its work at a solar field in Berkeley Township, NJ, Penn Union was a party to a Jobsite Agreement. *Id.* ¶ 15; *see also* ECF No. 1-1. Penn Union (via Caruso's signature) executed the Jobsite Agreement and agreed that it read and fully understood the terms. *Id.* ¶¶ 16, 18. Most relevant, those terms required Penn Union to "[a]dopt, abide by, and be bound by all provisions of the collective bargaining agreement." *Id.* ¶ 17. The CBA mandates, *inter alia*, full and timely contributions to Plaintiffs, regular remittance reports, production of books and records upon request, and payment of interest and liquidated damages upon failure to comply with contractual obligations. *Id.* ¶ 19; *see also* ECF No. 1-2.

Plaintiffs allege that Defendants failed to make payments or file remittance reports for work completed in October and November 2023, despite being alerted via letter of their failure to comply. *Id.* ¶¶ 21, 23-24. Contemporaneous records made by Ironworkers Local Union #399 demonstrate that Defendants owe no less than $32,616.22 in cumulative contributions to various funds. *See* ECF No. 10 ¶¶ 8-9.

II.   **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment against a party once the Clerk of Court has entered default. As an initial matter, the Court must determine whether "the unchallenged facts constitute a legitimate cause of action." *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (citation omitted). Then, if a legitimate cause of action is found, the court must consider the *Chamberlain* factors: (1) "prejudice to the plaintiff if default is denied"; (2) "whether the defendant appears to have a litigable defense"; and (3) "whether the defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The court must treat all factual

allegations made in the complaint to be conceded by the defendants, except for those related to damages. *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005); *see also Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). A court must use "sound judicial discretion" when considering whether to enter default judgment. *E. Elec. Corp. of New Jersey v. Shoemaker Constr. Co.*, 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009) (citation omitted).

### III. DISCUSSION

Both Counts I and II of the Complaint constitute legitimate causes of action against Defendants. Furthermore, Defendants have not demonstrated a litigable defense, Plaintiffs would be prejudiced by a denial of default judgment, and Defendants' conduct is culpable. The Court will therefore enter default judgment on Counts I and II. Additionally, the Court finds that Plaintiffs have established monetary damages with reasonable certainty and will thus award them as set out below.

#### a. Plaintiffs have a legitimate cause of action against Defendants.

29 U.S.C. § 1145 requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Moreover, if an employer fails to make contributions, ERISA provides for civil enforcement actions against that employer. *Id.* § 1132(a). Plaintiffs here allege that Defendant Penn Union signed the CBA but did not make contributions required under the term of that agreement. Therefore, Plaintiffs have pleaded a viable cause of action against Penn Union. *See, e.g., Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund, Vacation Fund, & Painters Dist. Council 711 Finishing*

*Trades Inst. v. Leo Constructing, LLC*, No. 22-CV-04645, 2024 WL 659346, at *4 (D.N.J. Feb. 16, 2024) (finding a viable cause of action arising out of very similar factual allegations).

Moreover, Plaintiffs have pleaded a viable cause of action against Caruso based on the obligations of fiduciaries of plan assets under ERISA. The CBA states that as soon as contributions "are due and owing," they become "Plan Assets." ECF No. 1-2 at 18; *see also Roofers Local 30 Combined Welfare Fund v. Lentz McGrane, Inc.*, No. 03-cv-4187, 2005 WL 425582, at *3 (E.D. Pa. Feb. 21, 2005) ("Plan asset determination generally turns on whether the contract or trust agreement explicitly states that unpaid contributions become 'plan assets' as soon as they are due and owing."). Therefore, the monies that should have been paid as contributions to Plaintiffs but that are still in Penn Union's control must be considered "plan assets" for the purposes of ERISA.

ERISA defines a fiduciary as anyone, among others, who "exercises any authority or control respecting management… of its assets." 29 U.S.C. § 1002(21)(A); *see also Confer v. Custom Eng'g Co.*, 952 F.2d 34, 36 (3d Cir. 1991) ("In determining who is a fiduciary under ERISA, courts consider whether a party has exercised discretionary authority or control over a plan's management, assets, or administration."). Plaintiffs' uncontroverted filings allege that Caruso was a principal of Penn Union, controlled Penn Union's assets, and was responsible for transferring funds from Penn Union to Plaintiffs. ECF No. 10 ¶ 16. Caruso's control over Penn Union's assets renders him a fiduciary of the unpaid contributions under ERISA.

"Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries… shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by

the fiduciary." 29 U.S.C. § 1109(a). Thus, the Court will find Defendants to be jointly and severally liable for all payments to Plaintiffs.

### b. Plaintiffs would be prejudiced by a denial of default judgment.

Plaintiffs would suffer prejudice if the Court denied default judgment. Defendants were properly served more than three months ago and have failed to even appear in the case. Interest on the Defendants' outstanding payments to the plaintiffs, as well as Plaintiffs' costs and attorneys' fees, continues to accumulate. The Court cannot allow Defendants to continually frustrate Plaintiffs' attempts to collect contractually guaranteed payments by simply failing to participate in the action. *See Trs. of Int'l Union of Painters*, No. 22-CV-04645, 2024 WL 659346 at *5 ("[B]ecause delinquent contributions can negatively impact the Plaintiffs' ability to pay their beneficiaries, Plaintiffs would be prejudiced if default judgment was not entered in their favor.") (citations omitted).

### c. Defendants have no litigable defenses.

Because Defendants have not filed an Answer, this Court is unable to evaluate whether they have a litigable defense. *See Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 52 (3d Cir. 2003). However, courts in this District have found that "where a party completely fails to respond to the claims against it, this factor weighs in favor of granting default against the party." *Bugg v. Just Wing It, LLC*, No. 18-cv-02399, 2020 WL 1675953 at *5 (M.D. Pa. Apr. 6, 2020) (citing *E. Elec. Corp. of New Jersey*, 657 F. Supp. 2d at 553)). Defendants' failure to respond makes it "highly unlikely" that they have any litigable defenses. *Bugg*, 2020 WL 1675953 at *5.

Moreover, Plaintiffs' Complaint and exhibits, including the signed agreement between Plaintiffs and Defendants, strongly suggest that Defendants will not have any litigable defenses. Even if they did, the Court may not assert affirmative defenses *sua sponte* for Defendants in order

to prevent a default judgment against them. *See Schwartz v. Taylor,* No. 17-CV-3799, 2021 WL 4818283 at *5 (E.D. Pa. Oct. 15, 2021). Therefore, the second *Chamberlain* factor is either inconclusive or weighs in favor of granting default judgment.

### d. Defendants' conduct was culpable.

"A defendant's culpable conduct weighs heavily in the evaluation of whether to grant or set aside a default judgment." *E. Elec. Corp. of New Jersey*, 657 F. Supp. 2d at 551. In this context, "culpable" means "willful" or in "bad faith." *Id.* at 553. "Bad faith may be presumed where a defendant fails to respond to a complaint and offers no reason for its failure to engage in the action." *Bugg*, No. 18-cv-02399, 2020 WL 1675953 at *5. Moreover, Defendants' apparent indifference regarding communications from Plaintiffs further demonstrates their willful disregard for the proceedings. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006). This Court thus concludes that Defendants' conduct is culpable.

Accordingly, this Court finds that the *Chamberlain* factors are satisfied and that an entry of default judgment on Counts I and II is appropriate.

### IV. DAMAGES

ERISA allows Plaintiffs to recover for i) the unpaid contributions; ii) applicable interest payments on those contributions; iii) the greater of the interest on the unpaid contributions or liquidated damages, as set forth under the agreement; iv) reasonable attorneys' fees and costs; and v) any other legal or equitable relief deemed appropriate by the Court. 29 U.S.C. § 1132(g)(2).

First, Plaintiffs seek outstanding contribution payments of $21,573 to the District Council Funds and $11,043.22 to the 399 Funds. ECF No. 10 ¶¶ 8, 9. In support, they cite Stewards' Reports, which are "contemporaneous records kept by a Local 399 steward on the jobsite as a backup document to remittance reports." *Id.* ¶ 8; *see also* ECF No. 1-3. The Court will award

Plaintiffs those outstanding sums. *See Trs. of New Jersey B.A.C. Health Fund v. All Finish Constr., Inc.*, No. 16-cv-5096, 2017 WL 2831165, at *3 (D.N.J. June 29, 2017) (accepting "stewards reports" as proof of hours worked at a jobsite).

Second, Plaintiffs seek interest payments at the rate agreed to by Defendants: 18% annually, or 1.5% per month. ECF No. 10 ¶ 12; *see also* ECF No. 1-2 at 14. Plaintiffs calculate that, as of May 6, 2024, Defendants owe $2,265.17 in interest to the District Council Funds and $1,149.54 in interest to the 399 Funds. *Id.* at ¶ 13. Interest will continue to accrue until the parties have resolved this matter. *Id.* at ¶ 14. The Court will award Plaintiffs the value of those interest payments by the date that the outstanding payments are resolved.

Third, Plaintiffs seek liquidated damages constituting 10% of the outstanding contributions, or $2,157.30 to the District Council Funds and $1,104.32 to the 399 Funds. ECF No. 10 ¶ 11. Despite the fact that the total interest payments are greater than the value of the contractually agreed-upon liquidated damages, *see* 29 U.S.C. § 1132(g)(2)(c), Plaintiffs requested liquidated damages instead of a double interest payment, and therefore the Court will award Plaintiffs the liquidated damages contemplated by the CBA. *See* ECF No. 1-2 at 14.

Finally, Plaintiffs seek $3,699.20 in attorneys' fees and costs and have provided a detailed accounting of such fees and costs in support. ECF No. 10 ¶ 25; ECF No. 10-3 ¶ 13. The Court must determine reasonable fees by multiplying the number of hours expended on the matter by a reasonable hourly rate for the attorneys in question. *See Teamsters Health & Welfare Fund of Philadelphia & Vicinity v. Dubin Paper Co.*, No. 11-cv-7137, 2012 WL 3018062, at *5 (D.N.J. July 24, 2012). Here, Plaintiffs' attorneys spent 10.75 hours on the matter at a rate of $290 per hour, as well as an additional $581.70 on filing and service fees. ECF No. 10, Ex. A ¶ 13. The Court accepts these totals as adequately supported by Plaintiffs' counsel's Declaration. ECF No.

10, Ex. A. It also finds that the fees are reasonable and consistent with prevailing market rates, and so the Court will award all requested fees and costs.

## V.     CONCLUSION

For the foregoing reasons, the Court will enter default judgment against Defendants, awarding a cumulative $32,616.22 in unpaid contributions, interest payments totaling $3,414.71 as of May 6, 2024, and accruing at a rate of 18% annually, liquidated damages totaling $3,261.62, and $3,699.20 in attorneys' fees and costs. An appropriate order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, JUDGE**